**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-00354-CMA-BNB

GREGG JOSEPH SAVAJIAN, #125166,

      Plaintiff,

v.

KEVIN MILYARD, Warden, Sterling Correctional Facility,
Physicans HEALTH PARTNERS, Facility Medical Provider,
DR. J. G. FORTUNATO, Staff Supr. Physician (PHP),
BRIAN WEBSTER, Physicans Asst. (PHP),
BEVERLY DOWIS, Facility Medical Administrator (PHP), and
OFFICER CHRIS WADE, Facility Transport Driver,

      Defendants.

---

**ORDER AFFIRMING JULY 22, 2010 ORDER OF UNITED STATES MAGISTRATE
JUDGE TO DENY PLAINTIFF'S MOTION TO STRIKE DEFENDANT WEBSTER'S
MOTION FOR SUMMARY JUDGMENT, ORDER AFFIRMING AND ADOPTING JULY
22, 2010 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND ORDER
DENYING OTHER MOTIONS AS MOOT**

---

This matter is before the Court on *pro se* prisoner Plaintiff Gregg J. Savajian's

Motion to Object to Magistrate's Denial of Plaintiff's Motion to Strike Defendant

Webster's Motion for Summary Judgment ("Objection to Denial of Motion to Strike")

(Doc. # 189); a July 22, 2010 Recommendation of United States Magistrate Judge

that Defendants' Motions for Summary Judgment ("July 22 Magistrate Judge

Recommendation") be granted (Doc. # 188); Plaintiff's Motion and Supplemental

Motion Requesting Disposition of Pleadings, Objections, and Resolutions to Motions

for *De Novo* Review Pursuant to Rule 72(b)(3) (Doc. ## 135, 150) ("Motions for *De Novo* Review"); and Plaintiff's Motion and Supplemental Motion for Status on 42 U.S.C. § 1983 Prisoner Complaint Civil Case Number: 2009-CIVIL-00354 (Doc. ## 184, 191) ("Motions for Status of Case"). For the reasons discussed below, Plaintiff's Objection to Denial of Motion to Strike (Doc. # 189) is DENIED; the July 22 Magistrate Judge Recommendation (Doc. # 188) is AFFIRMED AND ADOPTED; Plaintiff's Motions for *De Novo* Review (Doc. ## 135, 150) are DENIED AS MOOT; and Plaintiff's Motions for Status of Case (Doc. ## 184, 191) are DENIED AS MOOT.

Plaintiff filed his initial complaint on February 20, 2009 (Doc. # 3) and ultimately filed a Second Amended Complaint on April 27, 2009 (Doc. # 10). Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging three claims of relief, all of which are premised on purported Eighth Amendment violations arising from a reckless disregard for Plaintiff's safety and a deliberate indifference to and a reckless disregard of Plaintiff's need for medical treatment. In Claim 1, Plaintiff contends that Defendant Chris Wade recklessly disregarded Plaintiff's safety and recklessly endangered Plaintiff while transporting him to a medical evaluation during inclement winter weather and that Defendant Kevin Milyard denied required medical follow-up examinations. In Claim 2, Plaintiff contends that Defendants Kevin Milyard, Physcians Health Partners, Dr. J.G.

Fortunato,[1] Brian Webster, and Beverly Dowis were deliberately indifferent to and recklessly disregarded Plaintiff's need for medical treatment of pre-existing spinal injuries, namely two herniated discs, as well as injuries sustained while being transported by Defendant Wade to a medical evaluation. In Claim 3, Plaintiff contends that Defendants Physicans Health Partners ("PHP"), Fortunato, and Webster were deliberately indifferent to Plaintiff's need for medical treatment of Hepatitis C. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

## I. FACTUAL BACKGROUND

For purposes of the Motion for Summary Judgment, the Court views the facts in the light most favorable to Plaintiff. *See Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997). Thus, reasonable inferences are drawn and factual ambiguities are resolved in Plaintiff's favor. The Court incorporates, by reference, the facts set forth in the July 22 Recommendation (Doc. # 188, ¶¶ 1-38). Unless otherwise noted, any additional facts mentioned in this Order are undisputed and are taken from the parties' pleadings, briefs, and attached exhibits. Where necessary, the Court will expand on the facts in its analysis.

---

[1] Although Plaintiff has repeatedly spelled Defendant Fortunato's name as "Fortunado," the Court will use the spelling adopted by Defendants (*i.e.*, "Fortunato").

## II. PROCEDURAL HISTORY

On December 31, 2009, Defendants Kevin Milyard, PHP, Joseph Fortunato, Beverly Dowis, and Christopher Wade filed a Motion for Summary Judgment (the "Majority Defendants' Motion for Summary Judgment"). (Doc. # 139). Plaintiff first responded on February 11, 2010. (Doc. # 159.) However, on March 1, 2010, United States Magistrate Judge Boyd N. Boland[2] struck this Response from the record for failure to comply with the Court's Local Rules, which require, in pertinent part, that all type-written submissions be double-spaced and that all motions be concise. (Doc. # 165 at 1-2) (citing to D.C.COLO.LCIV.R 7.1H and 10.1E.) Plaintiff filed a new Response on March 29, 2010. (Doc. # 172.) Defendants replied on April 7, 2010. (Doc. # 174.)

On March 12, 2010, Defendant Brian Webster[3] filed a Motion for Summary Judgment. (Doc. # 169.) Plaintiff responded on April 13, 2010 (Doc. # 177), and Defendant Webster replied on April 21, 2010. (Doc. # 179.)

On March 30, 2010, Plaintiff filed a "Motion to Strike Defendant Webster's Motion for Summary Judgement [sic] Pursuant to Federal Rules of Civil Procedure, Rule 12"

---

[2] On May 6, 2009, this case was referred to Magistrate Judge Boland for the handling of all pre-trial and non-dispositive matters and for issuing recommendations on dispositive matters for this Court's review, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b). (Doc. # 13.)

[3] Defendant Brian Webster is no longer employed by the Colorado Department of Corrections. (Doc. # 16.) Due to Plaintiff's inability to obtain a correct address for Defendant Brian Webster, service of process was not completed on Webster until March 3, 2010. (Doc. # 167.)

(Doc. # 173), which all Defendants opposed on April 8, 2010 (Doc. # 175). On July 22, 2010, Magistrate Judge Boland denied Plaintiff's Motion to Strike. (Doc. # 187.) Plaintiff filed a "Motion to Object to Magistrate's Denial of Plaintiff's Motion to Strike Defendant Webster's Motion for Summary Judgement [sic]" on August 12, 2010 (Doc. # 189), and Defendants responded on August 25, 2010. (Doc. # 190.)

In connection with Defendants' Motions for Summary Judgment, Magistrate Judge Boland issued a July 22, 2010 Recommendation that both Motions be granted in Defendants' favor. (Doc. # 188 at 1, 23.) The Recommendation explicitly stated that the parties shall "have 14 days after service of this recommendation to serve and file specific, written objections." (*Id.* at 23.) Accordingly, Plaintiff's objections were due on Monday, August 9.[4] Despite this clearly-stated deadline, Plaintiff did not file his "Motion of Objection to the Magistrate's Recommendation to Grant Summary Judgement [sic] to the Defendants" ("Objection to July 22 Recommendation") until August 31, 2010 – 22 days late. (Doc. # 193.) However, on August 25, 2010, a letter from Plaintiff dated August 23, 2010 was filed with the Court. (Doc. # 191, docketed as "Motion for Order to Give Status on Plaintiff's Pending Motions").[5] In that letter, Plaintiff represents that on

---

[4] Pursuant to Fed. R. Civ. P. 5(b)(2)(c); 6(d), Plaintiff's deadline is extended by three days, due to service of process by mail.

[5] On the same date that the Court received Plaintiff's letter, the Court also received Defendants' Response to Plaintiff's Objection to Magistrate Judge Boland's Order denying Plaintiff's Motion to Strike. (Doc. # 190.) In pertinent part, Defendants highlighted the fact that, at that point in time, Plaintiff had not filed any objections to Magistrate Judge Boland's July 22, 2010 Recommendation to grant Defendants' Motions for Summary Judgment. (Doc. # 190 at 3.)

July 29, 2010, he submitted to the Court a "Motion for Enlargement of Time to Respond [to the Magistrate Judge's July 22, 2010 Recommendation]," but such Motion was not listed on a "register of action" that he had requested. (Doc. # 191.) Accordingly, Plaintiff requested confirmation that his "Motion for Enlargement of Time" was received and granted. (*Id.*)

On September 10, 2010, Defendants Milyard, PHP, Fortunato, Webster, Dowis, and Wade filed a "Response to Plaintiff's Second Objection to Recommendation of United States Magistrate Judge". (Doc. # 194.) In summary, Defendants contend that Plaintiff's failure to timely object to the Magistrate Judge's Recommendation waives *de novo* review by the Court and that the Magistrate Judge properly recommended that summary judgment be granted on all claims in Defendants' favor.

Finally, independent of Defendants' Motions for Summary Judgment, on December 21, 2009, Plaintiff filed a letter docketed as a "Motion Requesting Deposition [sic] of Pleadings, Objections, and Resolutions to Motions for *De Novo* Review Pursuant to Rule 72(b)(3)" (Doc. # 135) and, on January 26, 2010, a letter docketed as a "Second Motion for Order Requesting Deposition [sic] of [V]arious [P]leadings" (Doc. # 150). Defendants did not respond to either motion.

### III. STANDARD OF REVIEW

#### A. *PRO SE* PLAINTIFFS

Plaintiff is proceeding *pro se*; thus, the Court must liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court cannot

act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## B.  MAGISTRATE JUDGE RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is properly made if it is both timely and specific.  *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996).  Parties must file objections within 14 days after being served a copy of a recommended disposition.  Fed. R. Civ. P. 72(b).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *See id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).  Where no party files proper objections to a recommendation, the Court may review the recommendation for clear error.  *See* Fed. R. Civ. P. 72, Advisory Committee Notes (1983 Addition) (citation omitted); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (when there are no objections to a magistrate's recommendation, the court applies whatever standard of review that it deems appropriate).

In the instant case, as previously noted, Plaintiff failed to file timely his Objections.  Plaintiff did not file Objections until August 31, 2010, six days after

7

Defendants called attention to Plaintiff's failure to object in an unrelated response brief (Doc. # 190 at 3). However, Plaintiff has represented in another court filing, that within one week of the July 22 Recommendation, he filed a motion for extension of time to file objections. (*See* Doc. # 191.) However, the motion for extension is not docketed and does not appear to have been received by this Court. The Court also notes that on a prior occasion, the Court admonished Plaintiff for failing to comply with Court deadlines and warned Plaintiff that future noncompliance could result in sanctions. (Doc. # 143 at 3.) Despite the suspicious circumstances surrounding the filing of Plaintiff's Objections to the July 22 Recommendation, the Court will accept the Objections. In light of the Objections, the Court has performed a *de novo* review.

## C.    SUMMARY JUDGMENT

The purpose of a summary judgment motion is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party, *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476

(10th Cir. 1993), and any factual ambiguities must be resolved in favor of the nonmovant. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). The "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.

After the movant has met its initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which, as mentioned, the Court views in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex,* 477 U.S. at 324). However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

**D.      QUALIFIED IMMUNITY**

The traditional summary judgment analysis is expanded when qualified immunity applies.  When a defendant asserts a qualified immunity defense in a summary judgment motion, the burden first falls to the plaintiff to make a two-pronged showing that qualified immunity is inapplicable.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  Plaintiff must establish that: (1) the Defendants violated a constitutional right; and (2) a constitutional or statutory right was clearly established when the alleged violation occurred.  *Bliss v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006) (citation omitted).  The Court can consider these prongs in the order it chooses.  *See Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)).  Although the Court "review[s] the evidence in the record in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity."  *Medina*, 252 F.3d at 1128 (citation omitted).  If Plaintiff satisfies this two-part test, Defendants will then bear "the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that [they are] entitled to judgment as a matter of law."  *Bliss*, 446 F.3d at 1043 (citation and internal quotation marks omitted).

## IV. PLAINTIFF'S MOTION TO OBJECT TO MAGISTRATE JUDGE'S DENIAL OF PLAINTIFF'S MOTION TO STRIKE DEFENDANT WEBSTER'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 72(a), a magistrate judge may hear and decide nondispositive matters. A party may serve and file objections to the magistrate judge's orders within 14 days after being served with a copy. *Id.* The district judge assigned to the case must then consider the objections and modify or set aside the order to the extent it is clearly erroneous or contrary to law. *Id.*

In the instant case, on March 30, 2010, Plaintiff filed a "Motion to Strike Defendant Webster's Motion for Summary Judgment [sic] Pursuant to Federal Rules of Civil Procedure, Rule 12" ("Plaintiff's Motion to Strike"). (Doc. # 173.) Plaintiff requested that Defendant Webster's Motion be stricken because he "has been denied any Due Process for questioning and obtaining pre-trial information" from Defendant Webster, prior to Webster's filing of a dispositive motion. (*Id.* at 2.) Further, Plaintiff requested that he be allowed to propound discovery requests on Defendant Webster. (*Id.*)

On July 22, 2010, Magistrate Judge Boland denied Plaintiff's Motion to Strike because Plaintiff "does not address the information he needs or why such information is necessary to respond to Webster's motion." (Doc. # 187 at 2.) In so ruling, Magistrate Judge Boland noted that an "opposing party must demonstrate how additional time will enable him to rebut movant's allegations of no genuine issue of fact" and must not "mere[ly] assert[ ] that discovery is incomplete or that specific facts necessary to oppose

summary judgment are unavailable[.]" (*Id.*) (quoting *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986)).

Pursuant to Fed. R. Civ. P. 72(a), Plaintiff's objections were due on August 9, 2010.[6]  However, Plaintiff did not file his objections until August 12, 2010.  (Doc. # 189.) (Plaintiff's "Motion to Object to Magistrate's Denial of Plaintiff's Motion to Strike Defendant Webster's Motion for Summary Judgment (the "Motion to Object to Magistrate's Denial")).  Accordingly, Plaintiff's Motion to Object is untimely and, therefore DENIED.[7]

## V.  ANALYSIS OF DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment on two grounds: (1) they are entitled to qualified immunity and (2) the evidence in the record fails to support Plaintiff's claims. For the following reasons, the Court finds that summary judgment on all claims in Defendants' favor is warranted.

## A.  EIGHTH AMENDMENT VIOLATION FOR RECKLESS DISREGARD/ RECKLESS ENDANGERMENT AND NEGLIGENCE (CLAIM 1)

In support of his first claim for relief, Plaintiff alleges that Defendant Wade was negligent and deliberately indifferent to his health and safety and negligent in violation of

---

[6]  Once again, pursuant to Fed. R. Civ. P. 5(b)(2)(c); 6(d), Plaintiff's deadline is extended by three days, due to service of process by mail.

[7]  Even if Plaintiff timely filed his objections, the Court finds that Plaintiff's objections are without merit.  The Court is of the opinion that Magistrate Judge Boland's findings and conclusions are correct.  By the time Defendant Webster filed his Motion for Summary Judgment, the parties had already engaged in discovery.  Plaintiff has not articulated what additional information he needs to oppose Defendant Webster's Motion that he has not already received from the other Defendants.

the Eighth Amendment because he (a) did not place the plaintiff in a seatbelt; (b) "drove in a careless and dangerous manner on icy road conditions"; and (c) failed after the accident to determine if the plaintiff was injured. (Doc. # 10 at 6-7.)[8]

Plaintiff also alleges that Defendants Milyard and PHP violated his Eighth Amendment rights because they were aware of the accident the same day it occurred, but refused "to investigate for injury" and "examine the passengers." (*Id.* at 7.) Plaintiff also alleges that Defendant Milyard violated his Eighth Amendment rights and acted negligently by denying him "required medical follow-up examinations" and "in his position as overall management of this facility, disregarded possible further injury by neglect of medical treatment." (*Id.*)

Magistrate Judge Boland recommended summary judgment in Defendants' favor on this claim because Plaintiff failed to satisfy his "heavy burden" of proof that Defendants violated his Eighth Amendment rights and Plaintiff has not created a material fact dispute. (Doc. # 188 at 16-20.)

Plaintiff does not appear to have objected explicitly to this portion of the Magistrate Judge's Recommendation. Rather, Plaintiff's objections appear to be focused on his second and third claims for relief.[9] For the following reasons, the Court

---

[8] All page number references are to the numbering used by the Court's CM/ECF docketing system and not to the documents' original numbering.

[9] To the extent that Plaintiff has attempted to articulate objections in connection with his first claim for relief, the asserted objections are simply a recitation of the facts concerning an accident that occurred on February 5, 2008, while he was being transported from the Sterling Correctional Facility to Denver Health Center for medical treatment (the "February 5 Incident"). (*See* Doc. #193 at 16) ("The plaintiff was involved in an automobile accident due to the 'reckless disregard' for the passengers [sic] safety on 2/5/2008.").

adopts the Magistrate Judge's recommendation. In sum, the Court finds that Plaintiff's allegations do not rise to the high threshold necessary to state a cognizable Eighth Amendment violation. Further, the evidence in the record does not support a negligence claim.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials. *Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). First, under the objective component, the injury must be sufficiently serious, showing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Self*, 439 F.3d at 1230. Second, under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation omitted); *see also Self*, 439 F.3d at 1230-31.

"[B]ecause the Eighth Amendment requires only 'reasonable safety,' prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard*, 534 F.3d at 1239 (quoting *Farmer*, 511 U.S. at 844-45) (emphasis added). "It is not enough that a reasonable prison official would or should have known that the prisoner was at risk[.]" *Lewis v. Richards*, 107 F.3d 549, 553

14

(7th Cir. 1997). "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly [or] recklessly declined to act." *Howard*, 534 F.3d at 1239-40 (quoting *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 620 (11th Cir. 2007)). To determine whether prison officials acted reasonably, courts consider what actions the prison officials took, if any, and any available alternatives that might have been known at the time. *Howard*, 534 F.3d at 1240 (citing *Tafoya v. Salazar*, 516 F.3d 912, 918 (10th Cir. 2008); *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999)).

Plaintiff's Eighth Amendment claim against Defendants Wade and Milyard also appears to be premised upon their purported negligent conduct. However, "negligent conduct is insufficient to support a claim for the deprivation of a protected interest." *Mills v. Connors*, 319 Fed. Appx. 747, 751 (10th Cir. 2009) (unpublished); *see also Daniels v. Williams*, 474 U.S. 327, 330 (1986) (acknowledging that negligent conduct is not enough to state a claim for cruel and unusual punishment under the Eighth Amendment); *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008) ("negligent government conduct is insufficient to prove liability under § 1983"); *Shaw v. Olathe, Kan.*, No. 88-2353, 1990 WL 182366, at *4 (D. Kan. Oct. 16, 1990) (granting summary judgment in the defendants' favor as to all § 1983 claims based on the defendants' alleged negligent conduct).

1.    <u>Defendant Wade</u>

In his Complaint, Plaintiff alleges the following in support of his first claim of relief

against Defendant Wade:

- Defendant Wade "disregarded" Plaintiff's expressed "fear and trepidation" over and offer to delay a planned 120-mile road trip to the Denver Health Center for a medical consultation from the Sterling Correctional Facility on a day of inclement weather, including icy road conditions;

- He was not wearing a seatbelt and, when the transport vehicle collided with a pickup truck that was in front of them, the "impact of the collision" threw him into a security screen, "injuring his left knee," on which surgery had been performed previously to repair a torn ligament.

- "[A]t no time" did Defendant Wade inquire about Plaintiff's welfare.

(*Id.* at 6).

Plaintiff further contends that Defendant Wade "reckless[ly] disregard[ed] and

reckless[ly] endanger[ed]" Plaintiff by choosing not to reschedule the medical trip in

order to "avoid possible injury or accident".  (*Id.* at 7.)  However, the record contains

evidence that contradicts Plaintiff's allegations.  As the Magistrate Judge duly noted in

his Recommendation, Plaintiff testified at his own deposition that after the Incident,

Defendant Wade asked if Plaintiff was okay, to which Plaintiff responded in the

affirmative.  (Doc. # 139-3, Savajian Depo. at 19:1-6.)

Plaintiff's own sworn testimony also undermines his allegation that Defendant

Wade disregarded Plaintiff's suggestion that the trip be delayed for safety's sake.  In an

affidavit attached to his Response to the Majority Defendants' Motion for Summary

Judgment, Plaintiff states that he was informed that he could cancel the trip, but his medical appointment would not be rescheduled for some time.  (Doc. # 172 at 31.)

The record also does not support a finding that Defendant Wade acted recklessly or with complete disregard for Plaintiff's safety.  First, though Plaintiff "contests" Defendants' representation that the weather conditions on February 5, 2008, consisted of partly cloudy skies and snow flurries, such factual dispute is not genuine.  Beyond his representation that "the weather 'was' dangerously inclement prior to leaving" Sterling, Plaintiff does not dispute that there were snow flurries and the skies were partly cloudy. Therefore, Plaintiff has failed to establish that Defendant Wade's decision to proceed with the trip was reckless.  Second, the parties do not dispute that, just prior to the Incident, Defendant Wade was traveling 20-25 miles per hour, or that Wade lost control of the transport vehicle when he attempted to stop on an icy patch in the road, which caused him to start a chain reaction of collisions.  To the extent that Plaintiff disputes Defendants' statement of facts concerning the events leading up to the chain reaction, such dispute is not genuine and is not supported by the police incident report Plaintiff attached to his Response brief.  (*Compare* Doc. # 139, ¶ 5, *with* Doc. # 172, ¶ 5; Doc. #172 at 36.)  Moreover, Defendant Wade only received a citation for "following to [sic] close".  (Doc. # 172 at 36.)  To the extent that "following too closely" amounts to negligent driving, as previously noted, such negligence is not actionable under § 1983.

Based on the above facts, the Court concludes that no reasonable jury would find that Defendant Wade knew of and disregarded an excessive risk to Plaintiff's health or safety. In other words, no reasonable jury would conclude that choosing to drive at 25 miles per hour on a day of partly cloudy skies and snow flurries, or driving too closely behind another car amount to reckless disregard for Plaintiff's safety.

Accordingly, based on the foregoing, the Court affirms and adopts the Magistrate Judge's recommendation that summary judgment be granted in Defendant Wade's favor on Plaintiff's first claim for relief.

2.    Defendants Warden Milyard and PHP

Plaintiff also contends that Defendants Milyard and PHP infringed upon his Eighth Amendment rights by failing to examine the injuries he purportedly incurred during the February 5 Incident. The claim against Defendant Milyard appears to be premised on Defendant Milyard's "deni[al] [of] required medical follow-up examinations . . . , and [   ] his position as overall management [sic] of this facility." (*Id.* at 7.) Accordingly, Plaintiff contends that Defendant Milyard denied him "effective and proper medical care". (*Id.*)

In sum, Plaintiff's Eighth Amendment claim against Defendant Milyard appears to be premised on a theory of *respondeat superior*. The Magistrate Judge correctly recommended that summary judgment be granted in Defendant Milyard's favor on this claim. (Doc. # 188 at 19.) As noted by the Tenth Circuit, "[s]upervisory status alone does not create [ ] liability." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)

18

(citing *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008)); *see also McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) ("[a] defendant cannot be liable under a *respondeat superior* theory in a section 1983 case.").  "A plaintiff must show that an affirmative link exists between the constitutional deprivation and either the defendant's personal participation, his exercise of control or direction, or his failure to supervise." *Ledbetter v. Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003) (internal citation omitted); *see also Horton v.* Ward, 123 Fed. Appx. 368, 371 (10th Cir. 2005) (unpublished) (affirming lower court's disposition of medical needs based claim against prison officials and supervisors in absence of facts concerning the defendants' personal authorization, supervision, or participation in decisions regarding the plaintiff's medical care); *Medcalf v. Kan.*, 626 F. Supp. 1179, 1184 (D. Kan. 1986).

However, although the doctrine of *respondeat superior* does not apply in a § 1983 action, supervisors or other officials may be found to have exhibited "deliberate indifference" to serious medical needs sufficient to impose § 1983 liability where evidence exists that (1) officials have denied the prisoner access to medical personnel who are capable of evaluating the need for treatment, or (2) a pattern or practice of gross deficiencies in staffing, facilities, equipment or procedures is evident.  *Medcalf*, 626 F. Supp. at 1186 (citing *Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir. 1985)).

In the instant case, although Plaintiff alleges that Defendant Milyard denied Plaintiff required follow-up medical care, Plaintiff has failed to present any evidence of an affirmative link between Defendant Milyard and the medical care decisions

19

concerning Plaintiff. Moreover, Plaintiff fails to present any evidence that he was denied access to medical personnel who are capable of evaluating his ailments and his need for medical treatment. On several occasions, Plaintiff was examined and/or treated by outside specialists at Red Rocks Center for Rehabilitation, P.C. (Doc. # 139-6 at 13-16, 21-23, 31-33); the Department of Medical Imaging at Banner Health Colorado (*Id.* at 7-8); the Denver Health Medical Center (*Id.* at 9, 27-29); and Lowry Neurology Associates (*Id.* at 20). Further, Plaintiff has failed to present any evidence raising substantial doubts about the education, prior experience, qualifications, and overall fitness and competence of the examining and treating medical professionals. *See Medcalf*, 626 F. Supp. at 1186. Thus, based on the record before the Court, Plaintiff had reasonable access to medical personnel properly qualified to treat his ailments.

For the foregoing reasons, the Court finds that Plaintiff's Eighth Amendment claim against Defendant Milyard fails, and the Court adopts the Magistrate Judge's recommendation to grant summary judgment in Defendant Milyard's favor on Plaintiff's first claim for relief.

The Court also concurs with the Magistrate Judge that summary judgment in Defendant PHP's favor is warranted in connection with Plaintiff's first claim for relief, which also appears to be premised on a theory of *respondeat superior*. In pertinent part, Plaintiff alleges that "[PHP's] medical staff were [sic] aware of this vehicle accident the same day it occurred." (Doc. # 10 at 7.) Liberally construing this *pro se* Complaint as the Court must, Plaintiff also appears to contend that, despite PHP's knowledge

of the accident, PHP's staff nevertheless refused to authorize/approve of further examination of Plaintiff's injuries. (*Id.*) However, as with Defendant Milyard, PHP cannot be held liable for a constitutional violation in a § 1983 action simply on a theory of *respondeat superior. See Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying the *Monell* doctrine to a private entity acting under the color of state law); *Givens v. Shadow Mountain Behavioral Health Sys.*, No. 09-cv-0430, 2009 WL 3756597, at *3 (N.D. Okla. Nov. 5, 2009) (unpublished) ("A private entity cannot be held liable *solely* because it employs a tortfeasor; it can only be held liable for deprivations pursuant to official policy or custom.") (internal quotations and citation omitted). In order to establish the liability of a municipality or a private entity acting under color of state law, a plaintiff must show: (1) the existence of a custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged. *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997). In sum, the plaintiff must show that the municipality or private entity acting under color of state law was the "moving force" behind the injury. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

In the instant case, the record is bereft of any evidence that PHP withheld authorization for any treatment in connection with the knee injury Plaintiff incurred, or

that any such authorization was sought.  The record also lacks evidence as to whether PHP has a policy or custom to deny inmates medical treatment.

Accordingly, the Court adopts the Magistrate Judge's recommendation to grant summary judgment in Defendant PHP's favor on Plaintiff's first claim for relief.

**B.    DELIBERATE INDIFFERENCE/RECKLESS DISREGARD OF MEDICAL TREATMENT (CLAIMS 2 AND 3)**

Plaintiff's second and third claims for relief, which are also premised on an Eighth Amendment violation, stem from the purported denial of medical treatment.  Claim 2 concerns the alleged denial of medical treatment for Plaintiff's pre-existing spinal injuries and lower left leg pain, as well as Plaintiff's knee injury for the February 5 Incident. Claim 3 concerns the alleged denial of medical treatment for Plaintiff's Hepatitis C.

In support of Claim 2, Plaintiff alleges that Defendants PHP, Webster, Dowis, and Fortunato violated his Eighth Amendment rights by exhibiting deliberate indifference to and denying him medical treatment.  (Doc. # 10 at 8.)  Plaintiff contends that he was continuously promised, but denied, treatment, pain relief, and diagnosis.  (*Id.* at 8-9.) Plaintiff further contends that any examinations he received were "frivolous," that certain medical exams were "perfunctory," and that medical professionals such as Defendant Dr. Fortunato showed "blatant negligence" and provided "unprofessional diagnosis."  (*Id.* at 8, 10-11.)  Plaintiff also contends that Defendant Fortunato exhibited deliberate indifference in response to various grievances Plaintiff filed in connection with his requests for medical treatment of his back and knee injuries.  (*Id.* at 11.)  Plaintiff contends that these grievance responses were "unbelievably irrelevant" and "illegible".

(*Id.*)  Finally, Plaintiff accuses PHP of "consistently, continually, and egregiously den[ying] and delay[ing] required and prescribed medical treatment for over a year." (*Id.*)  Overall, Plaintiff's claim stems from his disagreement with the recommended, and pursued, course of treatment.

The Magistrate Judge recommended that summary judgment be granted in Defendants' favor on Plaintiff's second claim for relief because Plaintiff has not provided any competent evidence in support of this claim.  (Doc. # 188 at 20-21.)

Plaintiff objects to the Recommendation in connection with Claim 2, contending that he has submitted medical records "showing these egregious actions denying the plaintiff medical care."  (Doc. # 193 at 2.)  Plaintiff also asserts that "all of the MRI results show 'Multi-Level Disc Bulges' and each and every neurologist recommends the same surgery.  Whereas, not one iota of <u>evidence</u> can support the contentions & lack of treatment prescribed by the Sterling Medical staff."  (*Id.* at 8.)  Finally, Plaintiff speculates that SCF's medical staff is refusing or delaying medical treatment in order to save money and that they have fabricated and falsified certain test results.  (*Id.* at 12.) However, Plaintiff has provided no evidentiary support for these assertions, *i.e.*, they are nothing more than bald speculation.

In support of Claim 3, Plaintiff alleges that Defendants Webster, Fortunato, Dowis, and PHP acted "under color of state law" to violate Plaintiff's Eighth Amend-ment rights to medical treatment for "essential and serious medical needs," namely Hepatitis

C. (Doc. # 10 at 13.)[10]  Plaintiff has also lodged his third claim for relief against Defendant Milyard based on his role as Warden of the facility.  (*Id.* at 13.)  However, as with Plaintiff's first claim of relief, Plaintiff has failed to present any evidence supporting a direct link between Milyard and the alleged constitutional deprivation.  Accordingly, summary judgment in Defendant Milyard's favor is warranted.[11]

Defendants seek summary judgment in connection with Claims 2 and 3 for the same reasons set forth in connection with Claim 1.  Further, Defendant Beverly Dowis, who was only named in connection with Claim 3, seeks summary judgment because all the Plaintiff's claims against Dowis "are predicated on his mistaken belief that Ms. Dowis has some type of control over what medical treatment is provided to him by the SCF [Sterling Correctional Facility] Medical Staff."  (Doc. # 139 at 21.)

The Magistrate Judge recommended summary judgment in Defendants' favor in connection with Claims 2 and 3 because Plaintiff does not provide any competent evidence in support of his claims.  Further, the Magistrate Judge also recommended summary judgment in Defendant PHP's favor, for reasons set forth in connection with

---

[10]  Plaintiff also asserts that a Dr. Goldsmith and a Cindy Stieb violated Plaintiff's Eighth Amendment rights to medical treatment.  (*Id.* at 13.)  However, Plaintiff has identified neither individual in the caption of his Complaint.  Further, based upon the Court's review of the docket, service of process on either individual has not been completed.

[11]  Without any factual and evidentiary support, Plaintiff also contends that the afore-mentioned Defendants violated Plaintiff's Fourteenth Amendment right to due process "by not abiding by the required rules of time limits to respond to requested medical treatment."  (*Id.*)  To the extent that Plaintiff intended to assert a Fourteenth Amendment claim against any or all Defendants, the Court finds that summary dismissal of this claim is warranted, due to the lack of evidentiary support.

Claim 1, namely that Plaintiff has not identified any PHP custom or policy that resulted in a constitutional violation. (Doc. # 188 at 21-22.) For the following reasons, the Court finds that summary judgment in Defendants' favor on Claims 2 and 3 is warranted.

"In order to state a cognizable [Eighth Amendment] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[P]rison authorities have a constitutional duty to provide the needed medical treatment. From that premise flows the principle that prison authorities' or prison doctors' *reckless disregard*, *callous inattention*, or *gross negligence* which results in a denial of needed medical treatment is the legal equivalent of an intentional denial of that treatment, violating the Eighth Amendment." *Medcalf v. Kan.*, 626 F. Supp. 1179, 1190 (D. Kan. 1986) (emphasis in original) (citing *Ramsey v. Ciccone*, 310 F. Supp. 600, 605 (W.D. Mo. 1970)). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Frohmader v. Wayne*, 766 F. Supp. 909, 916 (D. Colo. 1991), *aff'd in part, rev'd in part on other grounds*, 958 F.2d 1024 (10th Cir. 1992). The deliberate indifference standard "does not encompass negligent care or mere differences in opinion between the inmate and the medical staff." *Id*; *see*

*also Perkins v. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (affirming lower court's dismissal of Eighth Amendment claim premised on the prisoner plaintiff's disagreement with medical staff's course of treatment for HIV).

In the instant case, as set forth below, the record is replete with evidence that Plaintiff received ongoing medical treatment and examinations for his pre-existing back and lower left leg pain from various professionals both at the SCF medical facility and at hospitals and clinics, despite the fact that Plaintiff's pain complaints were not always consistent or supported by Plaintiff's mobility. The record also contains evidence that Plaintiff received periodic treatment for his knee injury from the February 5 Incident.

On November 8, 2006, Plaintiff was seen at the Sterling Correctional Facility's medical clinic for complaints of low back pain. (Doc. # 139-6 at 2.) However, it was observed that Plaintiff was able to bend from the waist beyond 90 degrees without grimacing, lateral bend to 30 degrees, able to rotate at the waist without pain, and climb up and down from the exam table while shackled and belly-chained without difficulty. (*Id.*) On January 12, 2007, Plaintiff reported to Defendant Webster with additional pain complaints, which pain was consistent with previous MRI findings. (*Id.* at 3; MRI Report, Doc. # 139-7 at 6.) Plaintiff's pain medications were renewed. (Doc. # 139-6 at 2.)

Nearly seven months passed before Plaintiff again complained of low back pain on August 13 2007. Although Plaintiff complained that the pain was "killing" him again, Defendant Webster observed that Plaintiff's gait was brisk and he arose from the chair

and sat on the exam table without difficulty.  (*Id.* at 4).  Defendant Webster determined

that Plaintiff was suffering from a muscle spasm and prescribed Motrin and Robaxin.

(*Id.*)

Three months later, Plaintiff was again seen at the SCF medical facility for

complaints of "severe low back pain."  (*Id.* at 5.)  Plaintiff reported that he could not walk

more than one mile without experiencing severe pain, and it was observed that Plaintiff

walked with a noticeable limp.  (*Id.*)  A neurosurgical consultation was recommended,

which PHP ultimately authorized.  (*Id.*; Doc. # 139-9 at 2.)

On January 3, 2008, Plaintiff was again examined due to his complaints of back

pain.  (Doc. # 139-6 at 6.)  The treating physician recommended that another MRI be

taken, which PHP approved, and which was taken on January 7, 2008 (the "January

7 MRI").  (*Id.* at 6, 8; Doc. # 139-9 at 3.)  One week later, Defendant Webster requested

a pain management office visit for Plaintiff, which PHP also approved.  (Doc. # 139-9

at 4.)

On February 5, 2008, Plaintiff met with neurosurgery specialists at Denver Health

Medical Center at which time the results of the January 7 MRI were discussed.  (Doc. #

139-6 at 9.)  The MRI revealed a central herniated disk and an annular tear with some

herniation of the disk material, which is compatible with pain.  (*Id.*)  Surgical options

were discussed; a "simple minimally invasive microlaminectomy or laminotomy" with

disk removal and decompression of the nerve roots was recommended. (*Id.*)  It was

further noted that Plaintiff was in agreement with the recommended course of treatment.

(*Id.*)  On February 8, 2008, PHP authorized the recommended course of treatment. (Doc. # 139-9 at 5.)

On March 5, 2008, Plaintiff saw another doctor at the SCF medical facility, but this time, with complaints of pain in his left knee.  (Doc. # 139-6 at 17.)  An x-ray revealed no evidence of fracture or acute injury, and Plaintiff exhibited only a subtle limp and did not seem to be favoring that leg.  (*Id.*)  Although the doctor sought authorization from PHP for an MRI to further examine Plaintiff's knee, the PHP denied the request due to inadequate documentation.  (*Id*; Doc. # 139-9 at 8.)

On April 16, 2008, Plaintiff was seen at the SCF medical facility with complaints of increasing back pain and reports of trouble sitting for longer than three or four hours at a time.  (Doc. # 139-6 at 19.)  On May 23, 2008, an EMG was performed on Plaintiff's back.  (*Id.* at 20.)  The test presented no evidence of any entrapment neuropathy, polyneuropathy, or any evidence of acute or chronic denervation in the muscles tested. (*Id.*)  However, the report noted that the abnormalities that appeared on the January 7, 2008 MRI scan "may produce significant clinical symptoms."  (*Id.*)

On June 6, 2008, Plaintiff was seen at Red Rocks Center for Rehabilitation in connection with his low back pain, left lower extremity pain, and left knee pain. (*Id.* at 21-23.)  The treating physician and physicians assistant recommended facet injections in conjunction with transforaminal epidural steroid injection, and suggested a surgical consult, but noted that surgery should not be the first choice due to other noninvasive, nonsurgical treatments that had not yet been performed.  (*Id.* at 23.)

On July 14, 2008, Plaintiff was again seen at the SCF medical facility for an ADA evaluation of Plaintiff's mobility. Plaintiff was able to walk normally and hopped on and off the exam table without difficulty. (*Id.* at 26.) Plaintiff was also reported to have full range of motion in his joints without pain. (*Id.*)

On July 30, 2008, Plaintiff was seen at the Denver Health Medical Center, at which time the risks and benefits of epidural steroid injections were discussed with him. (*Id.* at 27-29.) It was noted that he would be scheduled for such injections as soon as possible. (*Id.* at 29.) Such injections were performed on September 3 and October 1, 2008. (*Id.* at 31, 33.)

On October 14, 2008, Plaintiff presented at SCF's medical facility to renew his medication. Defendant Webster, the physicians assistant noted that Plaintiff's gait was brisk, his posture good, and he was able to get onto the exam table without difficulty. (*Id.* at 34.) Plaintiff was again seen at SCF's medical facility on November 13, 2008. (*Id.* at 35.) His gait was brisk and unimpeded. He reported that his pain was much improved and that the pain medication was working very well. However, it was also noted that, due to a purported pharmacy error, the medication Plaintiff thought he was taking for the last several weeks was not actually the prescribed pain medication, but another drug. (*Id.*) This triggered Defendants Webster's and Fortunato's suspicions of Plaintiff's pain complaints.

On December 23, 2008, Plaintiff was seen by Defendant Webster, who again noted that Plaintiff's gait was brisk and his posture was inhibited, despite Plaintiff's

renewed pain complaints. (*Id.* at 36.) On March 20, 2009, Plaintiff was again seen by Defendant Webster, this time for an ADA assessment. (*Id.* at 38). Though Plaintiff exhibited a gait speed "twice as slow as the first [ADA assessment] exam," he was later observed walking with a "[n]ormal, [v]ery quick-paced walk" and freely swinging his arms. (*Id.*) A month later, Plaintiff again presented at SCF's medical facility with complaints of pain. (*Id.* at 40). However, during the exam, Plaintiff would swing his left leg while sitting on the exam table, and just prior to the exam, a surveillance camera caught Plaintiff walking with a steady gait, at a fast pace, while swinging his arms. (*Id.*)

Finally, on June 5, 2009, Dr. Fortunato determined that Plaintiff's pain complaints were not supported by objective findings, including EMG results, ADA mobility test results, and Plaintiff's observed mobility during examination. (Doc. # 139-6 at 41.) For example, although Plaintiff reported extreme pain and an inability to sit, he nevertheless was able to "squat[ ] to the extreme without difficulty at the side table" and "smil[ed] as he [ ] address[ed] passing inmates" while in the exam room. (*Id.*) Further, Plaintiff "[did] not grimace, stumble or move slowly when changing positions." (*Id.*)

Accordingly, based on the evidence in the record, the Court finds Plaintiff's Eighth Amendment claim for denial of, and/or delays in providing, medical treatment in connection with Plaintiff's pre-existing conditions is unavailing. The record establishes a history during which Plaintiff's ailments were considered and examined, and the best course of treatment was discussed. Plaintiff's claim appears to be premised on his differing opinion as to the proper course of medical treatment. As previously noted,

a differing opinion is insufficient to constitute "deliberate indifference" in violation of the Eighth Amendment. Accordingly, summary judgment in Defendants' favor on Plaintiff's Eighth Amendment claim in connection with his pre-existing conditions and the incurred knee injury (Claim 2) is warranted.

With respect to Claim 3, the denial of Hepatitis C treatment, the Court finds that summary judgment is also warranted. Plaintiff has failed to present any evidence that Defendants were deliberately indifferent to the seriousness of his medical condition, namely Hepatitis C. For example, on June 30, 2008, in response to Plaintiff's grievance demanding immediate treatment for Hepatitis C as a result of abdominal pain, Defendant Fortunato explained to Plaintiff the standards and procedures for admission into the Hepatitis C treatment program, which includes completion of a drug and alcohol treatment program as a prerequisite. (*See* Doc. # 139-6 at 25.) Defendant Fortunato also observed that the complained-of abdominal pain was not consistent with Hepatitis C and Plaintiff's enzyme levels were only minimally elevated. (*Id.*)

Further, during a May 14, 2009 meeting at which Plaintiff and Defendants Fortunato and Dowis, among others were present, Plaintiff was informed that he could take Alcoholics Anonymous ("AA") classes instead of having to wait until he becomes eligible for the facility's drug and alcohol classes. (Doc. # 139-4 at 7.) ("It was recommended to [Plaintiff] that he start taking the [AA] classes so he can get the [Hepatitis C] treatment he desires.") Plaintiff has not presented any evidence that he

has completed any AA classes.  Therefore, Plaintiff's own inaction appears to be the cause for his inability to obtain Hepatitis C treatment.

Accordingly, based on the foregoing, the Court finds that summary judgment in Defendants' favor on Plaintiff's Eight Amendment claim in connection with the denial of Hepatitis C treatment (Claim 3) is warranted.

Further, the Court finds that summary judgment on Claims 2 and 3 in Defendant Dowis's favor is appropriate.  Based on the evidence in the record, no reasonable jury would find that Dowis has any authority over, or role in connection with, medical providers regarding medications, treatments, or consults they order.  Defendant Dowis is the Health Services Administrator and Clinical Services Administrator.  (Doc. # 139-5, Dowis Interrogatory Responses, at 2-3).  In that capacity, she ensures that all staff members have completed their mandatory training requirements and she holds doctors and mid-level providers accountable for the days and hours they are scheduled to work. (*Id*. at 3.)  Dowis has no authority over PHP and she is not qualified to write medical orders or change any of the medical provider's orders.  (*Id*.)  Further, Dowis has had no knowledge of or direct involvement in Plaintiff's medical treatment.  (*Id*. at 3; Doc. # 139-4, Dowis Affid., ¶ 3.)

As the Tenth Circuit has previously noted, § 1983 claims "require a showing of an affirmative link between the defendant's conduct and any constitutional violation." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976).  In the instant case, Plaintiff has failed to present evidence

that establishes an affirmative link between Defendant Dowis's conduct and the medical treatment Plaintiff did or did not receive.

## C. QUALIFIED IMMUNITY

Having determined that Plaintiff failed to establish violations of a constitutional right and, therefore, failed to satisfy the first prong of the qualified immunity two-prong test, the Court affirms and adopts the Magistrate Judge's recommendation that the Defendants, sued in their individual capacity, be granted qualified immunity. (*See* Doc. # 188 at 21, 23.)

## VI. CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED THAT:

(1)     Plaintiff's Motion to Object to Magistrate's Denial of Plaintiff's Motion to Strike Defendant Webster's Motion for Summary Judgment (Doc. # 189) is DENIED;

(2)     The July 22, 2010 Order of United States Magistrate Judge Boyd N. Boland Denying Plaintiff's Motion to Strike Defendant Webster's Motion for Summary Judgment (Doc. # 187) is AFFIRMED;

(3)     The July 22, 2010 Recommendation of United States Magistrate Judge Boyd N. Boland (Doc. # 188) is AFFIRMED and ADOPTED;

(4)     The Motion for Summary Judgment filed by Defendants Kevin Milyard, Physicians Health Partners, Joseph Fortunato, Beverly Dowis, and Christopher Wade (Doc. # 139) is GRANTED;

(5)     Defendant Brian Webster's Motion for Summary Judgment (Doc. # 169)

        is GRANTED;

(6)     Plaintiff's "Motion for Status on 42 U.S.C. § 1983 Prisoner Complaint Civil

        Case Number: 2009-civil-00354 (Doc. # 184) is DENIED AS MOOT;

(7)     Plaintiff's August 25, 2010 Letter to the Clerk of Court, which is docketed

        as "Motion for Order to Give Status on Plaintiff's Pending Motions" (Doc.

        # 191) is DENIED AS MOOT;

(8)     Plaintiff's "Motion Requesting Disposition of Pleadings, Objections, and

        Resolutions to Motions for *De Novo* Review Pursuant to Rule 72(b)(3)"

        (Doc. # 135) is DENIED AS MOOT;

(9)     Plaintiff's January 22, 2010 Letter to the undersigned, which is docketed

        as "Second Motion for Order Requesting Deposition [sic] of Various

        Pleadings" (Doc. # 150) is DENIED AS MOOT; and

(10)    This case is DISMISSED WITH PREJUDICE.

DATED:  September   16  , 2010

                                    BY THE COURT:

                                    _____
                                    CHRISTINE M. ARGUELLO
                                    United States District Judge